UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   1:25-mj-00399-JCN |
| | ) |
| DIEGO FABIAN TIGASI VEGA, | ) |
| | ) |
| Defendant | ) |

**ORDER ON MOTION TO DISMISS**

The Government asserts that Defendant "knowingly and illegally enter[ed] the United States and thereafter . . . elude[d] examination and inspection by immigration officers" allegedly in violation of 8 U.S.C. § 1325(a)(2). (Complaint at 1, ECF No. 1.) Defendant moves to dismiss the charge. (Motion to Dismiss, ECF No. 14.) The Government opposes the motion. (Response, ECF No. 15.)

Following a review of the record and after consideration of the parties' arguments, the Court grants Defendant's motion.

**FACTUAL BACKGROUND**[1]

On November 23, 2025, border patrol agents in Greenville, Maine observed a roofing crew and a utility trailer with the logo of a company that border patrol agents had previously encountered and found to employ individuals unlawfully in the United States. At the worksite, the agents also saw a vehicle that they determined was registered to a person without lawful permission to work in the United States. After observing the vehicle

---

[1] The facts are derived from the probable cause affidavit filed with the complaint.

drive away with several occupants, the agents observed erratic driving and stopped the vehicle. Five individuals, including Defendant, ran from the vehicle in different directions. Defendant and another individual were located after an approximately two-hour search.

After border patrol agents transported Defendant to the Jackman Border Patrol Station, Defendant agreed to answer questions. Defendant told the agents that he is a citizen of Ecuador and illegally entered the United States three years ago by crossing a river near Texas.

## DISCUSSION

A noncitizen of the United States commits the misdemeanor crime of improper entry when he or she

> (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact[.]

8 U.S.C. § 1325(a). The Government asserts that Defendant violated § 1325(a)(2) by illegally entering the United States in 2022. Defendant argues that his alleged conduct cannot support a finding that he "eluded" either "inspection" or "examination" within the meaning of the statute because the Government does not allege, and the facts do not support a finding that he eluded inspection or examination at a port of entry.

The Government contends that § 1325(a)(2) does not require that the eluding occur at a port of entry. Relatedly, the Government contends that the obligation to submit to inspection and examination is ongoing and, therefore, the violation of § 1325(a)(2)

2

continues each moment a noncitizen remains in the country without submitting to inspection and examination.

When presented with the port of entry question, the Ninth Circuit concluded that to "elude examination or inspection by immigration officers in violation of § 1325(a)(2), the alien's conduct must occur at a designated port of entry that is open for inspection and examination."[2] *United States v. Corrales-Vazquez*, 931 F.3d 944, 954 (9th Cir. 2019) (internal quotation marks and modification omitted). The Ninth Circuit reasoned:

> Considered together, the[] three provisions [of § 1325(a)]—which carry identical criminal penalties—are "broad enough to cover entry in any manner." H.R. Rep. No. 70-2418, at 4. Section 1325(a)(1) covers aliens who enter or attempt to enter outside of an open port of entry. Section 1325(a)(2) covers aliens who cross through an open port of entry, but elude examination or inspection in doing so. And § 1325(a)(3) covers aliens who cross through an open port of entry and submit to examination and inspection, but obtain entry (or attempt to obtain entry) through willful misrepresentation or concealment. The statute works as a seamless whole.

*Id.* at 950 (case citations omitted).

The Ninth Circuit's reasoning is sound. The entirety of § 1325 and related provisions support the determination that the conduct proscribed by § 1325(a)(2) is conduct that occurs at a port of entry. *See Corrales- Vazquez*, 931 F.3d at 948 n.3 ("The term 'examination' in this provision refers to medical examinations, *see* 8 U.S.C. § 1222(b), while 'inspection' refers to background screening, searches, and other prerequisites for

---

[2] The relevant statutes use the term "alien" which "means any person not a citizen or national of the United States." *See* 8 U.S.C. § 1101(a)(3). When quoting statutes and case law, the Court will use the language in the statutes and case law. Otherwise, the Court will follow the approach of the Supreme Court in at least some of its relatively recent cases and "use[] the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020); *see also Patel v. Garland*, 596 U.S. 328 (2022).

admission, *see id.* § 1225(a)(3), (d).").  Moreover, if subsection (a)(2) were read as broadly as the Government asserts, subsection (a)(1) (and arguably subsection (a)(3)) would be rendered superfluous in practice.[3]

Consistent with its conclusion that § 1325(a)(2) governs conduct at a port of entry, in an earlier case, the Ninth Circuit rejected the Government's argument that the offense is a continuing one.  *United States v. Rincon-Jimenez*, 595 F.2d 1192 (9th Cir. 1979).  When evaluating whether the precursor to § 1325(a)(2) could be read to describe a continuing offense, the court considered the meaning of the terms "examination" and "inspection"—procedures then described in 8 U.S.C. §§ 1224 and 1225.  *Rincon-Jimenez*, 595 F.2d at 1193.  Because the examination and inspection processes "are to take place at the time of entry, a fixed point in time," the court concluded that the offense now described in § 1325(a)(2) "is consummated at the time an alien gains entry" without submitting to those processes.  *Id.* at 1193-94.

In *Rincon-Jimenez*, the Ninth Circuit also compared § 1325 to its "companion statute," 8 U.S.C. § 1326, which made it a felony for a person to enter or attempt to enter the United States, or "at any time [to be] found in" the country after having been previously arrested and deported.  *Id.* at 1194.[4]  The court observed that § 1326 explicitly made it a

---

[3] The Government has not cited, and the Court has not identified a case that questions the Ninth Circuit's analysis.  After *Corrales-Vazquez*, the Fifth Circuit found that the Government need not establish a successful entry as an element of the § 1325(a)(2) offense, but it cited the Ninth Circuit's opinion and did not attempt to distinguish it.  *See United States v. Montes-De Oca*, 820 F. App'x 247, 250-51 (5th Cir. 2020).  The Fifth Circuit considered factual circumstances involving a defendant's conduct at a port of entry where the defendant did not make a successful entry into the United States.  *Id.* at 249–50.

[4] Section 1326 has since been amended but the substance of its provisions remains the same.  The statute still provides for a fine under Title 18, imprisonment of up to two years, or both, upon proof that a noncitizen

"crime for an alien to remain in this country after an illegal reentry" but § 1325 contained no such explicit language. *Id.* In the absence of a term expressly signaling that the offense of eluding inspection and examination was intended to apply to circumstances other than the specific point and time of entry, the court declined to treat the offense as continuing. *Id.* Finally, the court observed that its ruling did "not undermine the force of the immigration laws" because the appellant remained subject to deportation on the facts alleged under 8 U.S.C. § 1251(a)(2).[5]  *Rincon-Jimenez*, 595 F.2d at 1194.

The Fourth Circuit later agreed with the Ninth Circuit's assessment. In *United States v. Cavillo-Rojas*, 510 F. App'x 238 (4th Cir. 2013), the court vacated a conviction entered on a charge under § 1325(a). *Id* at 249. The court held that "a 1325(a) offense is completed at the time of the defendant's illegal entry" and concluded that the charge was barred by the statute of limitations because the illegal entry in question had occurred more than five years before the filing of the charge. *Id.*

The reasoning of the Ninth and Fourth circuits is persuasive and consistent with the First Circuit's recent guidance in the assessment of whether a crime is a continuing offense. In *United States v. Pontz*, 132 F.4th 10 (1st Cir. 2025), the Court first noted that the Supreme Court has held that "a crime can qualify as a continuing offense in one of two ways: Either '[1] the explicit language of the substantive criminal statute compels such a conclusion, or [2] the nature of the crime involved is such that Congress must assuredly

---

"(1) has been denied admission, excluded, deported, or removed . . . and thereafter (2) enters, attempts to enter, *or is at any time found in*, the United States[.]" 8 U.S.C. § 1326(a) (emphasis added).

[5] The provisions formerly located in 8 U.S.C. § 1251 have since been transferred to 8 U.S.C. § 1227.

5

have intended that it be treated as a continuing one.'" *Id*. at 25 (quoting *Toussie v. United States*, 397 U.S. 112, 115 (1970)).  The Court then observed, "when there is no explicit direction from Congress in a statute's text, we must tread carefully before concluding that a crime is a continuing offense under *Toussie*'s second prong." *Id.*

Section 1325(a)(2) contains no explicit direction from Congress that the offense described was intended to be a continuing one.  Further, particularly given that Congress explicitly used the words "is at any time found in" in § 1326 to make a noncitizen's presence in the country an ongoing violation and did not use similar language in § 1325, the Court cannot conclude that Congress "must assuredly have intended" to make § 1325(a)(2) a continuing violation.

The Government also argues that even if Defendant cannot be deemed to have eluded examination or inspection continually since 2022, he eluded examination or inspection within the meaning of § 1325(a)(2) when he fled from border patrol and other law enforcement officers on November 23, 2025.  The Court is not persuaded. The obligation to submit to "examination" and "inspection" at the time of entry as required by § 1325(a) cannot reasonably be construed to extend to an encounter with a border patrol agent months or years after entering the United States.

In the context of § 1325(a)(2), "elude" is not analogous to the word "escape" as the Government contends because an escape generally contemplates avoiding an ongoing effort at restraint.  As the Ninth Circuit emphasized in both *Corrales-Vazquez*, 931 F.3d at 948 n.3 and *Rincon-Jimenez*, 595 F.2d at 1193, the terms examination and inspection have specific meanings connected to processing by immigration officers at ports of entry.  The

6

term "elude" derives its meaning in relation to that processing, which has geographical and temporal limitations.

Moreover, even if the word "inspection" in immigration statutes like § 1225 might conceivably be construed to include certain activities occurring sometime after arrival at a port of entry for certain applicants (*e.g.*, later scheduled asylum interviews), the Government has not cited any authority that would support an interpretation of § 1325(a)(2) that would require a noncitizen to submit to an inspection or examination whenever the person encounters a border patrol agent. A border patrol agent is not the equivalent of and cannot substitute for a port of entry. For instance, a noncitizen cannot satisfy § 1325(a)(1) and avoid prosecution by presenting to a border patrol agent months after entering the United States at a location other than a designated place of entry. Similarly, a noncitizen cannot satisfy § 1325(a)(2) and avoid prosecution by submitting to examination and inspection months or years after failing to do so at the time of entry.

## CONCLUSION

The Government alleges that Defendant eluded inspection and examination in violation of 8 U.S.C. § 1325(a)(2). The Government, however, does not allege and the record does not support a finding that Defendant's conduct occurred at a port of entry, where inspections and examinations occur. The Government, therefore, has not alleged

facts that would constitute a violation of 8 U.S.C. § 1325(a)(2).  Accordingly, the Court grants Defendant's motion to dismiss and dismisses the complaint.

                                                /s/ John C. Nivison
                                                U.S. Magistrate Judge

Dated this 12th day of December, 2025.